1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CARLOS DANIEL ACOSTA, | ) | CASE NO. C14-420 RSM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | BENCH ORDER, FINDINGS OF FACT, |
| | ) | AND CONCLUSIONS OF LAW |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

In this action, Plaintiff, Carlos Daniel Acosta (hereinafter "Mr. Acosta"), seeks a declaratory judgment that he is a United States citizen by birth in the United States.  He further seeks to compel the Defendants to issue him a passport based on his citizenship.  Defendants have asserted that Mr. Acosta was born in Mexico and has not met his burden of proving birth in the United States.  The only issue is whether, under 8 U.S.C. § 1503(a), Mr. Acosta has met his burden of proof of showing by a preponderance of the evidence that he is a United States citizen by birth in the United States.  There is no issue of naturalization, and no issue of derivative citizenship.

On March 23 and 24, 2015, the Court conducted a bench trial in this matter.  Only Mr. Acosta presented witnesses.  A court-certified Spanish-language interpreter translated the questions and answers for Mr. Acosta's mother and father during their testimony.  Both sides

ORDER
PAGE - 1

submitted exhibits.  Following the bench trial, the parties submitted proposed Findings of Fact and Conclusions of Law.  Dkts. #36 and #37.

Having considered the pleadings, trial briefs, sworn testimony of witnesses, and exhibits, the Court now FINDS AND CONCLUDES that Mr. Acosta has met his burden of proving by a preponderance of the evidence that he was born in the United States, and makes the following Findings of Fact and Conclusions of Law.

## II.    FACTS STIPULATED BY THE PARTIES[1]

1. Carlos Manuel Acosta Rodriguez (father of Plaintiff) (hereinafter "Carlos Manuel Acosta") and Maria de los Angeles Meraz de Acosta (mother of Plaintiff) (hereinafter "Maria Meraz de Acosta") were born in Mexico, are citizens of Mexico, and have never been citizens of the United States.

2. Carlos Manuel Acosta and Maria Meraz de Acosta have two children, Celia Maria Acosta and Carlos Daniel Acosta (Plaintiff).

3. Celia Maria Acosta was born in Cuahtemoc, Chihuahua, Mexico on September 14, 1979.

4. Carlos Daniel Acosta was born on July 23, 1983.

5. From May 1979 to December 1986, Carlos Manuel Acosta and Maria Meraz de Acosta owned a home where they resided at Ruben Posada Pompa, 5251, Fraccionamento, Cd. Juarez, Chihuahua, Mexico.

6. From 1979 through 1989, including during the year of 1983, Carlos Manuel Acosta was employed as a maintenance manager by Instituto Mexicano del Seguro Social (IMSS) hospitals in Mexico.

---

[1] *See* Pretrial Order at Dkt. #27.

ORDER
PAGE - 2

7. Carlos Manuel Acosta had a U.S. border crossing card that was issued on February 24, 1977. The border crossing card was valid through at least March 1, 1984.

8. Maria Meraz de Acosta had a U.S. border crossing card that was issued on March 26, 1980.  The border crossing card was valid through at least March 1, 1984.

9. Josefa Gutierrez Cisneros was the aunt of Maria Meraz de Acosta. In 1983 she owned a house and lived at 504 Sutley Street, Center, Colorado.

10. Rodrigo Cisneros, born on October 16, 1975, is the son of Josefa Gutierrez Cisneros. In 1983 he lived at 504 Sutley Street, Center, Colorado.

11. Josefa Gutierrez Cisneros passed away in October 2011.

12. A Birth Certificate for Carlos Daniel Acosta, stating Place of Birth as Cuauhtemoc, Chihuahua, Mexico and Date of Birth as July 23, 1983, was issued by the State of Chihuahua, Mexico, on August 5, 1983.

13. Cuauhtemoc is approximately 293 miles from where Mr. Acosta's parents lived in Juarez, Mexico. Juarez is directly across the Rio Grande from El Paso, Texas which is the closest Port of Entry into the United States from both Cuauhemoc and Juarez.

14. A Birth Certificate for Carlos Daniel Acosta, stating Place of Birth as 504 Sutley Street, Center, Colorado, and Date of Birth as July 23, 1983, was registered by the State of Colorado on February 29, 1984.

15. Center Colorado is approximately 477 miles from where Mr. Acosta's parents lived in Juarez, Mexico.

16. Carlos Daniel Acosta has a Baptismal Certificate that states that he was baptized at St. Francis Jerome Church in Center, Colorado on October 16, 1983. The certificate states that it was issued by St. Francis Jerome Church on October 16, 1983.

ORDER
PAGE - 3

17. In July 2001 Carlos Daniel Acosta graduated from Centro de Bachillerato Tecnologico Agropecuario #90 (CBTA 90) High School in Cuauhtemoc, Chihuahua, Mexico.

18. In June 2006 Carlos Daniel Acosta graduated with a Bachelors degree in Mechatronics Engineering from Instituto Tecnologico de Ciudad Cuauhtemoc (ITCC).

19. From 2010 to the present Carlos Daniel Acosta has been employed at the Boeing Company in Everett, Washington. His current position is Mechanical and Structural Engineering Manager.

20. On or about August 1, 2006, the United States Department of State issued a passport to Carlos Daniel Acosta.

21. On April 26, 2013, the United States Department of State issued a letter to Carlos Daniel Acosta stating that his passport was revoked.

22. On August 11, 2013, when Carlos Daniel Acosta returned from a business trip in Mexico, the United States Customs and Border Protection confiscated his passport.

23. On November 26, 2013, Carlos Daniel Acosta applied for a new U.S. passport.

24. On February 24, 2014, the United States Department of State issued a letter denying the new passport application filed by Carlos Daniel Acosta.

### III.    CREDIBILITY OF THE WITNESSES

Mr. Acosta testified at trial, and presented three additional witnesses on his behalf, including his cousin, Rodrigo Gutierrez; his father, Carlos Manuel Acosta; and his mother, Maria de los Angeles Meraz de Acosta.  The Court finds that all four witnesses were credible. Their answers during testimony were complete and appeared to be honest, and their demeanor

ORDER
PAGE - 4

and behavior on the witness stand leads the Court to conclude that they were truthful, credible

witnesses. *See Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999) ("We give 'special

deference' to a credibility determination that is based on demeanor.").

> Weight is given to the [] judge's determinations of credibility for the obvious reason that he or she "sees the witness and hears them testify, while the Board and the reviewing court look only to cold records." All aspects of the witness's demeanor – including the expression of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech and other non-verbal communication – may convince the observing trial judge that the witness is testifying truthfully or falsely. The same very important factors, however, are entirely unavailable to a reader of the transcript. . . .

*Paredes-Urrestarazu v. INS*, 36 F.3d 801, 818 (9th Cir. 1994).

While Mr. Acosta stands to gain from this litigation, and his family has an interest in

testifying favorably for him, the Court nevertheless finds that they testified with forthrightness

and honesty. *United States v. Hovsepian*, 422 F.3d 883, 888 (9th Cir. 2005) (*en banc*) ("[T]he

district court was entitled to view Appellees as generally credible, despite the government's

assertion that Appellees displayed an overall lack of candor and made self-serving assertions . .

. determinations to which we owe considerable deference."). *See also Kheiro v. Gonzales*, 166

Fed. Appx. 302, 305, 2006 U.S. LEXIS 3306, *6 (9th Cir. 2006) ("The [judge] discounted their

explanation because it was self-serving, a justification we have repeatedly rejected"); *Matter of*

*Acosta*, 19 I. & N. Dec. 211, 218 (BIA 1985) (holding that an applicant's testimony cannot be

rejected solely because it may be viewed as self-serving), *overruled on other grounds by*

*Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987).

Further, all four witnesses were knowledgeable and provided testimony that was helpful

to the Court. Generally, they all answered questions candidly on both direct and cross-

examination, even when such candor revealed that they had been previously untruthful. The

Court finds that such candor reinforces the credibility of the witnesses, particularly that of Mr.

ORDER

PAGE - 5

Acosta's parents. *See Marcos v. Gonzales*, 410 F.3d 1112, 1117 (9th Cir. 2005) (noting that "nothing in our case law suggests that, to be excusable, a lie must be told out of fear; the underlying motive is not determinative.").

## IV.    ADDITIONAL FINDINGS OF FACT

The Court now enters these additional Findings of Fact:

25. Mr. Acosta's cousin, Rodrigo Cisneros, testified about events at issue that are generally consistent with the testimony of other witnesses whose mental competency to testify the Department did not challenge. The quality of his recollection appeared normal for a person his age recalling events that occurred approximately 30 years earlier when he himself was only seven years old. Dkt. #35 at 10:8-30:4.

26. Mr. Acosta testified about events at issue that are generally consistent with the testimony of other witnesses whose mental competency to testify the Department did not challenge. The quality of his recollection appeared normal for a person his age. Dkt. #35 at 31:4-51:20.

27. Maria Meraz de Acosta testified about events at issue that are generally consistent with the testimony of other witnesses whose mental competency to testify the Department did not challenge. The quality of her recollection appeared normal for a person her age recalling events that occurred approximately 30 years earlier. Dkt. #35 at 52:8-91:18.

28. Carlos Manuel Acosta testified about events at issue that are generally consistent with the testimony of other witnesses whose mental competency to testify the Department did not challenge. The quality of his recollection appeared normal for a

ORDER
PAGE - 6

person his age recalling events that occurred approximately 30 years earlier.  Dkt. #35 at 92:11-144:6.

29. In July 1983, Maria Meraz de Acosta and her husband decided to travel from Juarez, Mexico to Center, Colorado to visit Josefa Gutierrez Cisneros, who had just been diagnosed with cancer.  Dkt. #35 at 35:5-11, 56:7-17, and 94:21-95:4. At the time Maria was approximately seven months and three weeks pregnant.  *Id.* at 56:24-57:4, 75:9-11, and 115:18-20.  The drive from Juarez, Mexico to Center, Colorado is approximately 8 to 10 hours by car.  *Id.* at 56:21-23.

30. Prior to making the trip, Maria Meraz de Acosta checked with her doctors to make sure it was safe for her to travel, and both doctors told her that it was safe for her to travel to Colorado.  Dkt. #35 at 57:20-25, 77:14-22, and 96:18-97:16.

31. On Friday, July 22, 1983, Maria Meraz de Acosta and her husband and their 3 year old daughter, Celia, drove from Juarez, Mexico to Center, Colorado, arriving in Center, Colorado in the afternoon.  Dkt. #35 at 58:13-20, 94:13-95:6 and 96:5-9, and Exhibit 14.

32. Maria Meraz de Acosta unexpectedly went into labor while she was in Center, Colorado.  Dkt. #35 at 59:2-60:5, 61:6-14, 89:24-90:4 and 96:14-17.  Carlos Manuel Acosta was not aware of any hospital in Center, Colorado.  *Id.* at 101:16-21.

33. When Maria Meraz de Acosta began to feel uncomfortable, Josefa Gutierrez Cisneros called a local "healer" whom she knew.  Dkt. #35 at 60:6-19 and 128:10-13.  Maria Meraz de Acosta went into intense labor on the morning of July 23, 1983.  *Id.* at 79:13-22.  The children in the house were sent to a bedroom until the baby was born. Dkt. #35 at 12:7-13 and 98:21-99:5.

ORDER
PAGE - 7

34. Rodrigo Cisneros, although he was only seven years old at the time, recalls the night Mr. Acosta was born: "I remember there was a lot of screaming and commotion, and pretty much I remember they put us -- Carlos Acosta's sister Celia, and my younger brother, they put us in a bedroom, and they told us to stay there. All we heard was screaming and running around, and that's pretty much it." Dkt. #35 at 12:7-13.

35. Carlos Daniel Acosta was born in a room in Josefa Gutierrez Cisneros' house in Center, Colorado on July 23, 1983. Dkt. #35 at 12:1-4, 65:3-11 and 103:6-104:11, and Exhibits 20 and 21.

36. Rodrigo Cisneros saw Plaintiff the day he was born, in his home in Center Colorado. Dkt. #35 at 11:24-12:6 and 12:14-16.

37. After the birth, Maria Meraz de Acosta desired to return as soon as possible to Juarez, Mexico, where her doctors were located. Dkt. #35 at 63:3-6, 61:9-62:16, and 99:22-101:6.

38. On July 24, 1983, late at night, Carlos Manuel Acosta and Maria Meraz de Acosta left Center, Colorado and drove back to Juarez, Mexico, with their children. Dkt. #35 at 100:10-12.

39. On July 25, 1983, Maria Meraz de Acosta went to Dr. Benitez-Vertiz, her gynecologist in Juarez, Mexico, for a post-partum examination at the department of labor and delivery. Dkt. #35 at 69:6-70:2, 81:23-82:9, 90:19-91:13, and 131:5-132:6, and Exhibit A-1. She was examined in the labor and delivery department on July 25th at approximately 11:00 a.m. Exhibit A-1.

40. During the week of July 25, 1983, Maria Meraz de Acosta attempted to obtain vaccinations for Carlos Daniel Acosta in Juarez.  Dkt. #35 at 66:20-69:2 and 83:9-18.  The vaccinations were refused because there was no Mexican birth registration for Carlos Daniel Acosta.  *Id.*

41. Carlos Manuel Acosta received a new work assignment beginning on August 1, 1983.  Dkt. #35 at 66:20-25, 70:3-8, 106:10-24 and 107:21-108.  He was transferred to the Taraumara Mountains to help build medical clinics in that area, and was based in Cuahtemoc.  *Id.*  On the weekend before August 1, 1983, Carlos Manuel Acosta and Maria Meraz de Acosta and their two children moved to Cuahtemoc.  *Id.* While Carlos Manuel Acosta worked in the Taraumara Mountains, Maria Meraz de Acosta and the children stayed with her parents, who also lived in Cuahtemoc.  *Id.* at 66:20-67:3.

42. During the week of August 1, 1983, Maria Meraz de Acosta attempted to obtain vaccinations for Carlos Daniel Acosta in Cuahtemoc.  The vaccinations were refused because there was no birth registration for Carlos Daniel Acosta.  Dkt. #35 at 66:20-69:2 and 83:9-84:14.

43. On August 5, 1983, Maria Meraz de Acosta obtained a Mexican birth certificate for Carlos Daniel Acosta in Cuahtemoc, Mexico.  Dkt. #35 at 66:20-69:2, 83:9-84:14 and 105:17-106:24, and Exhibit 11.  This birth certificate states that Carlos Daniel Acosta was born in Cuahtemoc, Mexico.  Exhibit 11.

44. Maria Meraz de Acosta and her husband believed that this birth certificate was necessary so that their son could get medical treatment and vaccinations.  Dkt. #35 at 66:20-69:2, 83:9-84:14 and 105:17-106:24.  They did not procure the certificate

for any nefarious purpose.  In fact, they did not believe there was anything "wrong" with obtaining a Mexican birth registration because they viewed it as reflecting his Mexican citizenship, due to the fact that he was born of parents who were Mexican citizens, and it did not entitle him to extra benefits that he otherwise would not have received.  Dkt. #35 at 142:19-143:7.

45. Carlos Manuel Acosta and Maria Meraz de Acosta used Mr. Acosta's Mexican birth certificate to procure him a Mexican vaccination card.  Dkt. #35 at 136:15-19.

46. Mr. Acosta's Mexican vaccination card, like his Mexican birth registration, states that he was born on July 23, 1983, in Cuauhtemoc, Mexico.  Exhibit A-4.

47. Carlos Manuel Acosta, and Maria Meraz de Acosta returned to Center, Colorado with their children in mid-October 1983.  Dkt. #35 at 70:9-17, 71:5-19 and 108:6-23.  They attempted to obtain a birth certificate for Carlos Daniel Acosta, but the person who registered births was not available and they were not able to obtain a birth certificate during that trip.  *Id.*

48. Carlos Daniel Acosta was baptized at St. Francis Jerome Church in Center, Colorado on October 16, 1983.  Dkt. #35 at 70:9-71:8 and 108:6-23. A Baptismal Certificate was issued on October 16, 1983.  Exhibit 12.

49. Carlos Manuel Acosta, and Maria Meraz de Acosta returned to Center, Colorado with their children in February of 1984. Dkt. #35 at 71:20-72:14.  During that visit they applied for a birth certificate for Carlos Daniel Acosta, stating that he was born on July 23, 1983 in Center Colorado.  *Id.*  The certificate was later mailed to them in Mexico.  *Id.* at 72:15-19 and Exhibit 1.

ORDER
PAGE - 10

50. Carlos Manuel Acosta and Maria Meraz de Acosta used Mr. Acosta's Mexican birth certificate to enroll him in kindergarten, first grade, middle school, high school and college in Mexico.  Dkt. #35 at 87:3-13 and 134:17-135:7.

51. Mr. Acosta's parents have always told him he was born in Center, Colorado. Dkt. #35 at 32:22-25 and 33:1-6.   No evidence was introduced during trial that Mr. Acosta's parents had ever told Mr. Acosta or anyone else in their family that he was born someplace other than Center, Colorado, including Mexico.  *See* Dkt. #35 at 17:21-18:1; 54:20-21; 74:1-3; 93:18-19; and 111:3-6.

52. Mr. Acosta's parents have always told other family members that Mr. Acosta was born in Center, Colorado.   *See* Dkt. #35 at 74:1-3 and 111:3-6.

53. The common understanding, or reputation, among Mr. Acosta's family members, including family members in Mexico, is that Mr. Acosta was born in the United States.   *See* Dkt. #35 at 17:21-18:1; 54:20-21; 72:25-73:8, 74:1-3; 93:18-19; and 111:3-6.

## V.       CONCLUSIONS OF LAW

1. The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § § 1331 and 2201.

2. Title 8 U.S.C. § 1503(a) allows any person who has been denied a right or privilege on the basis of non-nationality to file a declaratory judgment action for a *de novo* determination of his or her citizenship.  *See Vance v. Terrazas*, 444 U.S. 252, 256, 100 S. Ct. 540, 62 L. Ed. 2d 461 (1980); *Richards v. Secretary of State, Dept. of State*, 752 F.2d 1413, 1417 (9th Cir. 1985).

ORDER
PAGE - 11

3. There are two sources of citizenship: birth and naturalization. *Miller v. Albright*, 523 U.S. 420, 423-34, 118 S. Ct. 1428, 140 L. Ed. 2d 575 (1998).  Here, as only citizenship based on being born in the United States is being alleged, Mr. Acosta has the burden of proving by a preponderance of the evidence that he was born in the United States. *Mah Toi v. Brownell*, 219 F.2d 642, 643 (9th Cir. 1955); *Reyes v. Neely*, 264 F.2d 673, 674 (5th Cir. 1959); *Beltran v. Rivera*, 2012 U.S. Dist. LEXIS 93911, 2012 WL 2675477, at *3 n.1 (S.D. Fla. July 6, 2012); *Ramirez v. Clinton*, No. 08-5770, 2011 U.S. Dist. LEXIS 77941, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011); *Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D.D.C. 1961).  Proving a fact by a preponderance of the evidence means showing that the existence of said fact is more likely than not.

4. The Court must resolve all doubts regarding citizenship in favor of the United States and against those seeking citizenship.  *See Berenyi v. District Director*, 385 U.S. 630, 637, 87 S. Ct. 666, 17 L. Ed. 2d 656 (1967).  The Court may not grant citizenship out of equity or in the interests of justice; rather, a person is a United States citizen only by the manners and means prescribed by Congress.  *See INS v. Pangilinan*, 486 U.S. 875, 883-84, 108 S. Ct. 2210, 100 L. Ed. 2d 882 (1988).  Even a sincere belief of being born in the United States does not make one a citizen. *Beltran v. Rivera*, 2012 U.S. Dist. LEXIS 93911, *13 (S.D. Fla. July 6, 2012).

5. To meet his burden, Mr. Acosta must provide documentary evidence that he is a United States national.  22 C.F.R. § 51.41.  Primary evidence of nationality for a person born in the United States is an official birth certificate filed within one year of the date of birth.  *See* 22 C.F.R. § 51.42(a).  Alternatively, if an applicant's birth

certificate is insufficient to qualify as primary evidence, secondary evidence "includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth." 22 C.F.R. § 51.42(b). The Department's regulations are instructive but do not bind the Court, and there is no list of specific documents that must be used. A plaintiff must simply demonstrate by a preponderance of the evidence that he was born in the United States. *Ramirez v. Clinton*, No. 08-5770, 2011 U.S. Dist. LEXIS 77941, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011); *Rivera v. Albright*, No. 99 C 328, 2000 U.S. Dist. LEXIS 19397, 2000 WL 1514075, at *1 (N. D. Ill. Oct. 10, 2000)). From this the Court concludes that the Department intends its regulations be considered in the context of the specific case, that each piece of evidence be evaluated for its authenticity and reliability, and that the determination whether a plaintiff has met the preponderance burden be made on the totality of all the evidence submitted.

6. Mr. Acosta's evidence at trial was of a type contemplated in the Department's regulations as sufficient to establish citizenship. He produced his birth certificates, baptismal records, a previously-issued United States passport, and immunization records, as well as family photographs and a Letter of Testimonial from the State of Colorado, Department of Public Health and Environment. Exhibits 1, 2, 7, 11, 12, 14, 16, 18, 20, 21, and A-4. The authenticity and reliability of these documents were not challenged at trial, with the exception of the baptismal certificate, which

this Court overruled.  Dkt. #35 at 13:1-2, 15:1-4, 16:6-8, 16:24-17:1, 37:23-38:1,

38:16-17, 39:11-40:2, 41:11-13, 50:3-4, 65:12-14, and 137:8-10.

7.  Of particular probative value is Mr. Acosta's baptismal certificate.  Exhibit 12.  As

stipulated by the parties, **Carlos Daniel Acosta has a Baptismal Certificate that states**

**that he was baptized at St. Francis Jerome Church in Center, Colorado on October**

**16, 1983. The Certificate also states that it was issued by St. Francis Jerome Church**

**on October 16, 1983.**  *Id.*.  Josefa Gutierrez Cisneros attended Mr. Acosta's baptism

and is designated on his baptismal certificate as his godmother.  Dkt. #35 at 70:9-24

and 138:7-12, and Exhibit 12.  Further, the record shows that in October of 1983

and February 1984 both of Mr. Acosta's parents and Josefa Gutierrez Cisneros, as

Mr. Acosta's godmother, stated Mr. Acosta's place of birth as Center, Colorado. Mr.

Acosta's parents and Ms. Cisneros made these representations long before any

question had been raised about whether Mr. Acosta was born in the United States.

Put another way, in this case the baptismal record, one type of evidence the

Department recognizes as acceptable proof of citizenship, is an especially reliable

form of evidence because it was made at a time when no challenge to Mr. Acosta's

citizenship had been asserted and it could not have been made for the purpose of

resisting such a challenge.  Thus, the Court finds Mr. Acosta's baptismal record to

be highly probative evidence of his citizenship.

8.  On March 14, 1984, the State of Colorado issued a Certificate of Live Birth stating

that Mr. Acosta was born in Center, Colorado, on July 23, 1983, to parents Maria de

Los Angeles Meraz and Carlos Manuel Acosta.  Exhibit 1.  Josefa Gutierrez, also

signed the birth certificate certifying that the facts stated therein were true and

ORDER
PAGE - 14

correct.  *Id*.  The Court finds the Certificate of Live Birth highly probative, having been issued within one year of Mr. Acosta's birth.  Further, the Certificate is affirmed by the Letter of Testimonial issued by the State of Colorado, Department of Health, both of which appear to have been issued pursuant to the State's formal procedures.  *Id.* and Exhibit 1.  Like the baptismal certificate, this Certificate of Live Birth is an especially reliable form of evidence because it was made at a time when no challenge to Mr. Acosta's citizenship had been asserted and it could not have been made for the purpose of resisting such a challenge.  Further, the Government did not assert, and no evidence at trial suggested, that Mr. Acosta's parents obtained the certificate in response to a claim that Mr. Acosta was born in Mexico or in anticipation of a legal challenge to his U.S. citizenship.  Thus, the Court finds Mr. Acosta's Colorado birth certificate to be highly probative evidence of his citizenship

9.  A Mexican birth certificate creates a presumption that the person is an alien.  *Rivera v. Albright*, No. 99 C 328, 2000 U.S. Dist. LEXIS 19397, 2000 WL 1514075, at *1 (N. D. Ill. Oct. 10, 2000), citing *United States ex rel. Rongetti v. Neely*, 207 F.2d 281, 284 (7th Cir. 1953).  This presumption continues until plaintiff proves the contrary.  *See Corona-Palomera v. INS*, 661 F.2d 814, 818 (9th Cir.1981).  A delayed birth certificate is given "far less weight" than a contemporaneous birth certificate, which is almost conclusive.  *Liacakos v. Kennedy*, 195 F. Supp. 630, 632 (D.D.C. 1961).

10. The Court finds reliable and probative Mr. Acosta's Colorado birth certificate, but acknowledges that in this case it is not conclusive proof that Mr. Acosta was born in

ORDER
PAGE - 15

the United States.  The District of Oregon, relying on the Western District of Texas, recently addressed the proper evidentiary treatment of delayed birth certificates:

> Petitioner also argues that she is entitled to judgment on the pleadings because the Order by which the Texas judge entered her delayed birth certificate is entitled to full faith and credit under the applicable statute.  Under the Full Faith and Credit statute, the Texas birth certificate "shall have the same full faith and credit in every court and office within the United States" as it would receive in a Texas court. 28 U.S.C. § 1739.  Under Texas law, a copy of a birth certificate "that is certified by the state registrar is prima facie evidence of the facts stated in the record."  This means that even affording it full faith and credit, Petitioner's delayed Texas birth certificate may be rebutted by other evidence and is not conclusive proof of her Texas birth or United States citizenship.  Thus, Petitioner's Full Faith and Credit argument fails and she is not entitled to a judgment on the pleadings on this basis.

*Lopez v. United States Dep't of State*, 2013 U.S. Dist. LEXIS 4273, *32-33 (D. Or. Jan. 9, 2013) (citing *De La Cruz v. Clinton*, No. A-11-CV-675-AWA, 2012 U.S. Dist. LEXIS 73882, 2012 WL 1941373, at *3-4 (W.D. Tex. May 29, 2012)) (citations omitted).  *See also Mah Toi v. Brownell*, 219 F.2d 642, 643 (9th Cir. 1955) (rejecting delayed birth certificate as conclusive proof of birth under the Full Faith and Credit statute).  However, for the reasons stated above, the Court finds the evidence supporting Mr. Acosta's Colorado birth certificate reliable and, thus, finds it probative evidence that Mr. Acosta was born in the United States.

11. Mr. Acosta produced evidence at trial sufficient to overcome the presumption of alienage created by his Mexican birth certificate.  As discussed above, Mr. Acosta produced a Certificate of Live Birth, supported by a Letter of Testimonial, and a baptismal certificate, both of which are highly probative evidence of citizenship.  Further, at trial, Mr. Acosta's parents provided a credible explanation for the existence of the Mexican birth certificate and credible testimony regarding the

ORDER
PAGE - 16

circumstances giving rise to its creation.  Dkt. #35 at 66:6-69:5, 84:15-85:7, 105:14-106:24, 132:20-133:11, and 136:15-19.

12. The Court finds the prior issuance of a U.S. passport to Mr. Acosta probative evidence of his U.S. citizenship.  *See, e.g.*, *Magnuson v. Baker*, 911 F.2d 330, 333 (9th Cir. 1990) ("[T]hrough section 2705, Congress authorized passport holders to use the passport as conclusive proof of citizenship."); *Vana v. Att'y Gen.*, 341 Fed. Appx. 836, 839 (3d Cir. 2009) (*per curiam*) ("[A] United States passport is considered to be conclusive proof of United States citizenship. . . ."); *Edwards v. Bryson*, 884 F. Supp. 2d 202, 206 (E.D. Pa. 2012) (finding the holder of an expired valid U.S. passport to be a U.S. citizen and reasoning that "[t]o hold otherwise, would lessen the import of a passport as compared to that of a certificate of naturalization or a certificate of citizenship, which is exactly what § 2705 forbids. . . ."); *United States v. Clarke*, 628 F. Supp. 2d 15, 21 (D.D.C. 2009) ("§ 2705 puts passports in the same status as certificates of naturalization for the purpose of proving U.S. citizenship."); *In re Villanueva*, 19 I. & N. Dec. 101, 103 (B.I.A. 1984) ("Accordingly, we hold that unless void on its face, a valid United States passport issued to an individual as a citizen of the United States is not subject to collateral attack in administrative immigration proceedings but constitutes conclusive proof of such person's United States citizenship.").  For the reasons stated herein, the Court finds that Mr. Acosta was a United States citizen at the time his original U.S. passport was issued.

13. The Court factors into its analysis that Mr. Acosta's parents have always told him he was born in the United States.  *See Ramirez v. Clinton*, No. Civ. 08-8770-DSD/JSM,

2011 U.S. Dist. LEXIS 77941, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011) (finding similar statements were admissible and probative of a plaintiffs place of birth); *Beltran v. Rivera*, No. 2:10-CV-24288, 2012 U.S. Dist. LEXIS 93911, 2012 WL 2675477, at *3 n.2 (S.D. Fla. July 6, 2012) (citing *Ramirez* for same). *See also* FED. R. EVID. 804(b)(4)(B) (when a declarant is unavailable, her statement concerning the birth of "another person . . . if the declarant was related to the person by blood, adoption or marriage" is not hearsay). Additionally, the Court considers reputation among the Plaintiff's family and in the community that he or she was born in the United States. *United States v. Jean-Baptiste*, 166 F.3d 102, 110 (2d Cir. 1999) ("[T]here is a special need for this type of evidence," because, as here, "[o]ther evidence of family matters is frequently unavailable, and it is likely that these matters have been sufficiently inquired about and discussed with persons who have personal knowledge so that a trustworthy consensus has been reached."). Statements of family members about matters of family history are "generally presumed to be truthful." *U.S. v. Palomares-Munoz*, No. 00-50216, 2001 WL 219951, at *1 (9th Cir. 2001), citing FED. R. EVID. 803(19) ("a reputation among a person's family . . . or among a person's associates in the community . . . concerning the person's birth . . . " is not hearsay).

14. At trial the evidence was uniform that Mr. Acosta's parents, his sister, his cousins, his godmother, and the family's friends consistently told Mr. Acosta and acknowledged among themselves he was born in the United States. *See* Dkt. #35 at 17:21-18:1; 32:22-25, 33:1-6, 54:20-21; 72:25-73:8, 74:1-3; 93:18-19; and 111:3-6. Each witness who so testified was credible on this point and each identified the

source of their information – either personal knowledge or long familiarity with the family – about Mr. Acosta's place of birth.  *Id.*  There was no evidence at trial that Mr. Acosta had been told by anyone that he was born in Mexico and no evidence to reasonably suggest that any of the witnesses were untruthful on this point.  The Court rejects the Department's contention that it should find the testimony of Mr. Acosta's family members not credible because they are "interested witnesses" and therefore biased.  As noted in the Court's credibility findings above, nothing in the witnesses' demeanors or testimony reasonably suggested that any of them were being untruthful in their testimony.  The single fact of a familial relationship cannot by itself be enough to undermine the credibility of these witnesses' testimony, as that would effectively nullify Federal Rule of Evidence 803(19), which recognizes as admissible evidence to establish a person's place of birth the testimony of the person's family.   Thus, Mr. Acosta's testimony that his parents, relatives, and family friends have always told him that he was born in the United States, as well as the corroborating testimony of his cousin, further supports his and his parents' statements that he was born in the United States, and is credible and probative on this point.

15. **Rodrigo Cisneros** is legally competent to give admissible testimony. The Court concludes that his trial testimony is admissible and probative, and was credible, on the subjects to which he testified.

16. Maria Meraz de Acosta is legally competent to give admissible testimony. The Court concludes that her trial testimony is admissible and probative, and was credible, on the subjects to which she testified.

ORDER
PAGE - 19

17. Carlos Manuel Acosta is legally competent to give admissible testimony. The court concludes that his trial testimony is admissible and probative, and was credible, on the subjects to which he testified.

18. Carlos Daniel Acosta is legally competent to give admissible testimony. The court concludes that his trial testimony is admissible and probative, and was credible, on the subjects to which he testified.

19. The Court rejects the Department's assertion that Mr. Acosta was born in Mexico. Maria Meraz de Acosta grew up in Cuahtemoc, and her parents lived there in 1983. Carlos Manuel Acosta, was employed as a head of the Engineering Department of Maintenance by Instituto Mexicano del Seguro Social ("IMSS") hospitals in Mexico, including the IMSS department in Cuahtemoc.  Because he knew the doctors at the hospital, he and his wife were able to get excellent treatment at the hospital in Cuahtemoc.  Dkt. #35 at 105:25-106:5.  Maria Meraz de Acosta had previously worked in the health department in Cuahtemoc, she knew the employees there, and she would have had everything available for her if Carlos Daniel Acosta had been born in Cuahtemoc.  *Id.* at 61:15-62:7 and 76:10-19.  Her daughter Celia was born in the hospital in Cuahtemoc on September 14, 1979, and Maria Meraz was very satisfied with the treatment she received when Celia was born.  *Id.* at 61:15-62:7.  Thus, based on the evidence in this record, the Court concludes that if Carlos Daniel Acosta had been born in Cuahtemoc, then it is likely that he would have been born in the hospital in Cuahtemoc, not in a house, and Maria Meraz de Acosta would have remained in the hospital for a postpartum examination and treatment in Cuahtemoc.

20. As discussed above, credible testimony and evidence, including photographic evidence, establishes that Carlos Daniel Acosta was not born in a hospital but was born in a house in Center, Colorado.

21. As discussed above, credible testimony and evidence, including a letter signed by Dr. Luis Benitez-Vertiz, establishes that Maria Meraz de Acosta was in the labor and delivery department in Cd. Juarez for a postpartum examination on July 25, 1983, at 11 a.m. Cd. Juarez is approximately 293 miles from Cuahtemoc.  Dkt. #27, Agreed Fact 13.  The Court rejects the Government's contention that Maria Meraz de Acosta gave birth to her son in Cuahtemoc on Saturday, July 23, and then traveled to Cd. Juarez for a postpartum examination on Monday morning July 25, 1983.

22. Viewing the evidence as a whole, the Court concludes that Mr. Acosta has met his burden of showing by a preponderance of the evidence that he was born in the United States, in Center, Colorado, on July 23, 1983..

23. As a result, Carlos Daniel Acosta is a United States citizen.

24. Having established he was born in the United States and is a United States citizen, Mr. Acosta is entitled to a United States passport.

## VI.    CONCLUSION

Having entered the above Findings of Fact and Conclusions of Law, the Court hereby ORDERS that the Department of State shall issue to Mr. Acosta a United States passport as soon as is practicable, but not later than forty-five (45) days from the date of this Order.  This matter is now CLOSED.

//

ORDER
PAGE - 21

DATED this 29th day of April 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 22